**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**Martinsburg**

| | |
|---|---|
| **IN RE AB&C GROUP, INC.,** | **Civil Action Nos. 3:08-CV-131 & 132** |
| | Bankruptcy Case No. 08-482 |
| Debtor. | (Judge Bailey) |

**MEMORANDUM OPINION AND ORDER REVERSING**
**FINAL ORDER ENTERED JULY 2, 2008**

Pending before this Court are two appeals from an Order of the United States Bankruptcy Court for the Northern District of West Virginia entered on July 2, 2008, denying the Debtor's motion to authorize payment of pre-petition wages and related taxes. The appeals are taken by the Debtor in Case No. 3:08-CV-132 and by Sovereign Bank in Case No. 3:08-CV-131.

The central issue in these appeals is whether approximately $300,000 in funds advanced by Sovereign Bank to the Debtor specifically to pay employees' wages should be used as intended or become a part of the bankruptcy estate. All parties agree that this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

Inasmuch as the facts relevant to this issue are not in dispute, this Court will review the decision of the Bankruptcy Court *de novo*. **In re Bateman**, 515 F.3d 272, 275 (4th Cir. 2008).

**Factual Background**

Debtor is a subsidiary of BlueSky Brands, Inc. ("BlueSky"). When in operation, Debtor provided catalog order services for a variety of companies, including its sister

1

subsidiaries of BlueSky. On March 21, 2006, Debtor, BlueSky, and BlueSky's other subsidiaries entered into a Revolving Credit and Term Loan Agreement with Sovereign Bank ("Sovereign"). On February 4, 2008, Debtor entered into a Forbearance Agreement with Sovereign. When Debtor, BlueSky, and Debtor's sister subsidiaries were unable to agree on a more permanent loan arrangement, on March 14, 2008, Sovereign terminated its funding of Debtor's revolving credit and loan agreement and swept Debtor's bank accounts. As a result, Debtor had no cash to fund its payroll obligations.

On March 27, 2008, the Debtor, BlueSky, and Debtor's sister subsidiaries entered into a letter agreement ("Letter Agreement") with Sovereign. Among the provisions of the Letter Agreement was a promise by Sovereign to "carve out" a portion of its collateral and deposit the sum of $309,226 into the Debtor's payroll account, so that the Debtor could pay payroll and payroll taxes. On April 1, 2008, in accordance with its Agreement, Sovereign deposited the sum of $309,226 into Debtor's payroll account.

During this period, several former employees filed lawsuits against the Debtor, resulting in the appointment of a receiver in state court. The state court receiver refused to distribute the payroll checks to the former employees, prompting Debtor's president to file an emergency motion with the state court to compel distribution of the payroll checks. The Circuit Court of Jefferson County, West Virginia, granted the motion, but shortly thereafter, on April 4, 2008, this involuntary action was filed against the Debtor, preventing the state court receiver from distributing the payroll checks.

On April 21, 2008, Debtor filed a motion seeking the Bankruptcy Court's authorization to distribute the payroll checks. The newly appointed Trustee objected to the motion on the basis that the funds deposited into the payroll account by Sovereign were

property of the bankruptcy estate.

After oral argument on the motion, the Bankruptcy Court issued its July 2, 2008, Memorandum Opinion and Order, holding that the funds were property of the bankruptcy estate pursuant to § 541 of the Bankruptcy Code.

Appeals from the July 2, 2008, decision were taken both by the Debtor and by Sovereign Bank. By Order entered October 17, 2008, this Court consolidated these appeals.

**Discussion**

On appeal, Sovereign Bank asserts that the Bankruptcy Court erred in failing to find that the Debtor held the funds in its payroll account advanced by Sovereign in trust. As noted above, under the March 27, 2008, letter agreement, Sovereign agreed to deposit the sum of $309,226 into the payroll account of the Debtor for the express purpose that those funds be used to pay the wages of the former employees and the applicable payroll taxes. While the agreement makes no mention of a trust arrangement, "the fact that the word 'trust' may not have been used is not determinative since 'the existence of a trust does not depend on the terminology used.'" **Carpenter v. Suffolk Franklin Savings Bank**, 362 Mass. 770, 777, 291 N.E.2d 609, 614 (1973), citing **Gordon v. Gordon**, 332 Mass. 193, 195, 124 N.E.2d 226, 227 (1955); **Robinson v. Cogswell**, 192 Mass. 79, 84, 78 N.E. 389 (1906); **Rugo v. Rugo**, 325 Mass. 612, 616, 91 N.E.2d 826, 829 (1950).[1]

---

[1] The Bankruptcy Court properly determined that Massachusetts law applied in determining the issue of whether a trust exists, since the letter agreement specifically stated that the agreement would be construed under Massachusetts law. Even were West Virginia law to apply, the result would not change. *See* **State ex rel. Insurance Comm'r. v. Blue Cross & Blue Shield of West Virginia, Inc.**, 219 W.Va. 541, 638 S.E.2d 144 (2006).

"In Massachusetts, 'the existence of a trust does not depend upon the terminology used.' ***Carpenter v. Suffolk Franklin Savings Bank***, 362 Mass. 770, 777, 291 N.E.2d 609 (1973) (quoting ***Gordon v. Gordon***, 332 Mass. 193, 195, 124 N.E.2d 226 (1955)). Instead, '[w]hether a trust was created depends upon the intention of the parties "manifested by their words and conduct and the end to be accomplished."' ***Carpenter,*** 362 Mass. at 777, 291 N.E.2d 609 (quoting ***Povey v. Colonial Beacon Oil Co.,*** 294 Mass. 86, 90, 200 N.E. 891 (1936)). *Accord* ***In re Pilot Radio & Tube Corp.,*** 72 F.2d 316, 319 (1st Cir.), *cert. denied,* 293 U.S. 584 (1934); ***Rugo v. Rugo,*** 325 Mass. 612, 616, 91 N.E.2d 826 (1950); *see generally* 5 M. Rhodes, ***Couch on Insurance 2d*** § 29:41. Put another way: 'No particular form of words is required to create a trust. But whether one exists or not is to be ascertained from the intention of the parties.' ***Sawyer v. Cook,*** 188 Mass. 163, 165, 74 N.E. 356 (1905)." ***Equitable Life Assur. Soc. of the U.S. v. Porter-Englehart***, 867 F.2d 79, 84-85 (1st Cir. 1989).[2]

"Where the owner of property transfers it to another with a direction to transfer it to . . . a third person, this may be a sufficient manifestation of an intention to create a trust." ***Carpenter v. Suffolk Franklin Savings Bank***, *supra*, citing Scott, ***Trusts*** (3d ed.) § 24, at 192.

The ***Carpenter*** court also referred to an Iowa case, stating, "In ***Andrew v. Union Sav. Bank & Trust Co.***, 220 Iowa 712, 715, 263 N.W. 495, 497, the court stated that when money was left with the bank for the payment of a debt to a designated person: '(T)he

---

[2] The panel in the ***Equitable*** decision included now Supreme Court Justice Stephen Breyer.

4

money does not become the property of the bank. The fund is merely intrusted to the bank as a trustee or bailee without any authority on the part of the bank to use it as its own.'" 362 Mass. at 777, 291 N.E.2d at 614.

"The Court of Appeals for the Second Circuit has stated: 'There are certain principles we regard as established: . . . Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity as a trustee, for a breach of trust. ***Taylor v. Benham***, 5 How. 233, 274, 12 L.Ed. 130; ***Kane v. Bloodgood***, 7 Johns.Ch. (N.Y.) 110, 11 Am.Dec. 417.' ***In re Interborough Consol. Corp.,*** 288 F. 334, 347 (2d Cir.)." ***Carpenter,*** *supra*, 362 Mass. at 777-78, 291 N.E.2d at 614.

In ***Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co.***, 790 F.2d 1121 (4th Cir. 1986), the Fourth Circuit stated that "§ 541(d) provides that '[p]roperty in which the debtor holds ... only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.' Further, the Senate Report, in explaining the scope of the Section, declared that under § 541 the trustee 'could take no greater rights than the debtor himself had.' S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5868. The Report proceeded to declare that this limitation upon the rights of the trustee applied particularly to property held in trust. It said:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for

5

another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed. This section and proposed 11 U.S.C. 545 also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor."

790 F.2d at 1124-25.

"There can be no doubt of the general proposition that where money is placed in the hands of one person, to be delivered to another, a trust arises in favor of the latter, which he may enforce by bill in equity, if not by action at law." **McKee v. Lamon**, 159 U.S. 317, 332 (1895).

The Bankruptcy Judge, in finding that no trust was created, relied upon two factors. The first factor was that the Letter Agreement contained no express declaration of a trust or that the Debtor was to hold the moneys in a fiduciary capacity. The second factor was that there was no notice to the beneficiaries as is required for an informal, voluntary trust.

This Court is compelled to disagree. Those cases finding an express trust for payment of moneys to third party have not imposed a requirement of an express declaration of trust or an indication that the holder of the funds was to do so in a fiduciary capacity. For example, in **Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co.**, 790

F.2d 1121 (4th Cir. 1986), the Fourth Circuit found a check made out to two payees, one of which was the debtor, was held in trust for the non-debtor party.  There was no express trust document, nor was there any more indication of a fiduciary relationship than in this case.  The Bankruptcy Court for the District of Massachusetts found a trust where the debtor was in the payroll processing business and received funds from its customers in the exact amount necessary to pay the payroll taxes.  Again, there was no express trust agreement nor any more indication of a fiduciary relationship than in this case.  **Shipley Company, Inc. v. Darr (In re Tap, Inc.)**, 52 B.R. 271 (Bankr. D. Mass. 1985).

The Letter Agreement was an enforceable agreement requiring the payment of the funds transferred to the former employees, as is evidenced by the fact that, after the Debtor was placed into receivership, the Circuit Court of Jefferson County, West Virginia, ordered the receiver to pay the funds to the former employees in accordance with the agreement.

This Court also is of the opinion that the Bankruptcy Court erred in requiring that notice have been given to the beneficiaries.  The Bankruptcy Court correctly noted that as a general rule, there is no requirement that the beneficiary have notice of or accept the trust, citing **Restatement (Second) Trusts** § 36 (1959) and **Restatement (Third) Trusts** § 14 (2003).  It also then correctly noted that when the trust is an informal, voluntary trust, notice is required, citing **Mikshis v. Palionis**, 345 Mass. 316, 187 N.E.2d 147 (1963).  The type of "informal, voluntary trust" as considered in **Mikshis** and prior cases, however, are cases in which the owner of property keeps the property in his or her own name and declares a trust.  See **Mikshis**, *supra*; **Cohen v. Newton Sav. Bank**, 320 Mass. 90, 67 N.E.2d 748 (1946); **Murray v. O'Hara**, 291 Mass. 75, 195 N.E. 909 (1935).

7

In ***Cohen***, the court stated that "[t]he sort of informal trust considered in the O'Hara case and in many of the cases there cited was one of a deposit in a bank in the name of the depositor in trust for another without more, and much that we have said above has been for the purpose of preventing confusion in cases of that character upon which, and upon the law governing gifts inter vivos, the judge seems to have relied."

In ***Aronian v. Asadoorian***, 315 Mass. 274, 52 N.E.2d 397 (1943), the court stated that:

> The plaintiff argues that the trust was not valid because it does not appear that the two sons as cestuis que trust had notice of the trust during the lifetime of the settlor. If we assume that they had no notice, we are nevertheless of opinion that the trust is valid. There exists in this Commonwealth a peculiar rule of law to the effect that, in some circumstances, a bare voluntary declaration of trust by the owner of property who retains the legal title and actual power of control is not effectual unless communicated to the beneficiary.
>
> . . .
>
> Cases in which a requirement of notice to the beneficiary has crystalized into a rule of law are of the same general type; that is to say, cases in which it is claimed that an owner of personal property such as savings bank books or securities, while retaining physical control, has voluntarily, without previous legal obligation and in some more or less informal manner, declared himself trustee for the benefit of the claimant, and where the court looks for notice to

8

the beneficiary as necessary proof of the finality of the alleged settlor's action. *Clark v. Clark*, 168 Mass. 523, 47 N.E. 510; *Scrivens v. North Easton Sav. Bank*, 166 Mass. 255, 44 N.E. 251; *Welch v. Henshaw*, 170 Mass. 409, 49 N.E. 659, 64 Am.St.Rep. 409; *Bailey v. New Bedford Inst. for Savings*, 192 Mass. 564, 78 N.E. 648, 116 Am. St. Rep. 270; *Boynton v. Gale*, 194 Mass. 320, 80 N.E. 448; *Supple v. Suffolk Sav. Bank*, 198 Mass. 393, 396, 84 N.E. 432, 126 Am.St.Rep. 451; *Robertson v. Parker*, 287 Mass. 351, 191 N.E. 645; *O'Hara v. O'Hara*, 291 Mass. 75, 195 N.E. 909; *Hogarth-Swann v. Steele*, 294 Mass. 396, 2 N.E.2d 446; *Greeley v. Flynn*, 310 Mass. 23, 27, 36 N.E.2d 394.

The rule is not generally accepted in other jurisdictions. Am.Law Inst. *Restatement: Trusts*, § 36. *Scott on Trusts*, 36. So far as we have discovered, it has never been applied in an instance where the holder of the legal title instead of attempting to declare himself a trustee, has completed a legally valid conveyance or transfer of that title to another person as trustee. Such reason as exists for the rule has little or no force in cases where there is a complete and legally valid transfer of the legal title with due observance of all the formal requisites of such a transfer. Guarded language in a number of the cases previously cited seems to leave transfers to another to hold in trust outside the scope of the rule. We think that the United States Circuit Court of Appeals for the First Circuit correctly interpreted the law of this Commonwealth when it held in *In re Pilot Radio & Tube Corp.*, 72 F.2d

316, at pages 318, 319, that the rule does not apply in such cases. 315 Mass. at 266-67, 52 N.E.2d at 398-99.

Accordingly, the type of trust for which notice must be given differs significantly from the trust in this case, and the *Mikshis* rule simply does not apply.

Even were an express trust not found, the transaction in question would fall under the category of a resulting trust. "According to the Restatement of Trusts:

> [a] resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

*Restatement (Second) of Trusts* § 404 (2003). Typically, a resulting trust arises in instances where one furnishing the consideration for real property places legal title to the property in the name of another while intending that the one furnishing the consideration be the true, equitable owner. *Checovich v. Checovich,* 339 Mass. 71, 157 N.E.2d 643 (1959); *Collins v. Curtin,* 325 Mass. 123, 89 N.E.2d 211 (1949). A resulting trust can also arise when the subject property is personalty, as in this case. *Rand v. Goldblatt,* 347 Mass. 566, 199 N.E.2d 207 (1964). The fact that the word trust is not used is not determinative because 'the existence of a trust does not depend upon the terminology used.' *Gordon v. Gordon,* 332 Mass. 193, 195, 124 N.E.2d 226, 227 (1955). It has been said that '[w]here the owner of property transfers it to another with a direction to transfer it to ... a third person, this may be a sufficient manifestation of an intention to create a trust.'

*Shipley Company, Inc. v. Darr,* 52 B.R. 271, 275 (Bankr. D. Mass. 1985) (quoting Scott on Trusts (Third ed.) § 24 at 192). Therefore, a court must determine if, at the time of the transfer, the transferor intended for the benefit to accrue to one other than the one originally taking or receiving the property. *Weston v. Stuckert,* 329 F.2d 681, 682 (1st Cir. 1964). If such an inference is determined, and no rebuttal offered, then a resulting trust can arise. *Id.*" *In re UDI Corp.*, 301 B.R. 104 (Bankr. D. Mass. 2003).

In *UDI*, the debtor was a buyer of wholesale office products. The debtor would negotiate discount prices on behalf of its members. One of the suppliers issued rebates which were sent to the debtor for distribution to its members. When bankruptcy intervened, the bankruptcy court held that the rebate funds in the debtor's possession were not the property of the estate. *See also* ***T & B Scottdale Contractors, Inc. v. United States***, 866 F.2d 1372 (11th Cir. 1989) (funds deposited in debtor-subcontractor's account by contractor to pay materialmen not property of the bankruptcy estate); ***In re Bank of New England Corp.***, 165 B.R. 972 (Bankr. D. Mass. 1994) (moneys collected by holding company from subsidiaries to pay advertising costs not property of bankruptcy estate).

This Court believes that the facts in the present case warrant the same treatment. The moneys were transferred to the Debtor's payroll account specifically to pay the employees and the concomitant payroll taxes.

The Bankruptcy Court indicated that the intended benefit was not to the employees, but that the intended benefit was to the Debtor in allowing it to wrap up its affairs. While payment of the former employees' wages would incidently benefit the Debtor, the parties most benefitted are clearly the former employees who would otherwise receive little or

nothing for their labor.

## Conclusion

Having determined that the funds transmitted to the payroll account of the debtor qualify both as an express and a resultant trust, the result is clear. "Under the Bankruptcy Code, a trustee is entitled to distribute all property within the scope of the bankruptcy estate. The Code defines the scope of such property broadly, including within the estate 'all legal or equitable interests of the debtor in property as of the commencement of the case.' 11 U.S.C. § 541(a)(1). Expressly excluded from the estate is any '[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest....' 11 U.S.C. § 541(d). We have previously explained that the purpose of § 541(d)'s exclusion is to ensure that the trustee 'take no greater rights [in the property] than the debtor himself had.' **Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co.**, 790 F.2d 1121, 1124 (4th Cir.1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868). Therefore, when a 'debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate"' for purposes of the Bankruptcy Code. **Begier v. IRS**, 496 U.S. 53, 59 (1990)." **In re Dameron**, 155 F.3d 718 (4th Cir. 1998).

The Order of the United States Bankruptcy Court for the Northern District of West Virginia entered on July 2, 2008, denying the Debtor's motion to authorize payment of pre-petition wages and related taxes, is **REVERSED** and this case is **REMANDED** with instructions to exclude the $309,266 previously held in the Debtor's payroll account from the Debtor's estate. Such funds are to be paid to the former employees and the taxing

12

authorities.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to the United States Bankruptcy Court for the Northern District of West Virginia.

**DATED:** May 28, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE